# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERESA L. BOTTOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-568-KEW |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Teresa L. Bottom (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. Claimant completed her high school education.  Claimant has worked in the past as a cashier, machine operator, and production worker. Claimant alleges an inability to work beginning March 14, 2011 due to limitations resulting from low back pain and hearing loss.

## Procedural History

On February 20, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 21, 2015, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Christopher Hunt by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. The ALJ entered a partially favorable decision on October 19, 2015. The Appeals Council denied review of the decision on October 26, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform sedentary work after October 29, 2013.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an improper RFC; and (2) failing to meet the burden at step five to identify other jobs that Claimant could perform.

### RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease and a hearing impairment. (Tr. 14). The ALJ determined that from March 14, 2011 through October 29, 2013, Claimant was under a disability. (Tr. 20). During this period, the ALJ found that Claimant's RFC precluded work. In so doing, he found Claimant could lift/carry up to ten pounds occasionally and less than ten pounds frequently; could stand/walk two hours in an eight hour workday; could sit for six hours in an eight hour workday; could not climb ladders, ropes, or scaffolds; could only occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; would be limited to code three noise intensity environments as defined in appendix D of the SCO, "such as something in the neighborhood of a restaurant during off peak hours or an office environment." He also found Claimant would be absent from work two or more days per month. (Tr. 15).

However, beginning October 29, 2013, Claimant's disability ended due to medical improvement which increased her RFC. Id. With regard to Claimant's RFC, the ALJ determined that effective October 29, 2013, Claimant could perform sedentary work with limitations. The RFC was the same except that the required absence from work was removed from the functional limitations. (Tr. 21).

After consultation with a vocational expert, the ALJ

determined Claimant could perform the representative jobs of clerical mailer, charge account clerk, and food order clerk, all of which existed in sufficient numbers both regionally and nationally. (Tr. 24). The ALJ concluded Claimant's disability ended on October 29, 2013. Id.

Claimant first contends the ALJ erroneously determined that Claimant experienced medical improvement such that her improved RFC allowed her to regain the ability to work beginning October 29, 2013. On October 21, 2013, Claimant underwent a Functional Capacity Evaluation ("FCE"). The FCE concluded that Claimant could perfom work in the light classification. (Tr. 525-27). On October 28, 2013, Dr. James B. Blankenship, Claimant's neurosurgeon, found that based upon the FCE, her current clinical course, and her radiographic and MRI findings, Claimant had reached maximum medical improvement. He determined Claimant that Claimant was stable and that her neural compression was documented as good. Dr. Blankenship placed a permanent lifting restriction of ten pounds. Her impairment rating and current restrictions caused Dr. Blankenship to recommend that Claimant could work at a sedentary job as long as it accommodated the ability of at least being able to get up and stretch every two to three hours with no standing on her feet greater than six hours at a continuous period of time.

6

(Tr. 546).

Claimant asserts the ALJ erred by failing to include the shifting of position referenced by Dr. Blankenship and supported by Claimant's testimony. The ALJ determined that Dr. Blankenship's opinion was entitled to "great weight" as being consistent with his findings upon examinations, Claimant's history of lumbar surgeries, and the findings upon the RFC testing. He also found Dr. Blankenship's opinion took Claimant's subjective claims of chronic pain into account. He concluded that Dr. Blankenship's finding that Claimant would require stretching every two to three hours did not mean Claimant would have to take extra breaks. He recognized Dr. Blankenship's restriction to six hours of standing and reduced that to two hours of standing. (Tr. 23).

Generally, if a functional limitation can be addressed by scheduled breaks, no further accommodation need be made in the RFC. *See* Henderson v. Astrue, 2013 WL 141610, at *5 (D. Kan. Jan. 11, 2013)(unpublished)("[M]ost work assumes a morning break, a lunch period, and an afternoon break at approximately two-hour intervals."); *cf*. Soc. Sec. R. 83-12, 1983 WL 31253 ("Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."). Moreover, the medical evidence indicated

7

Claimant only received minimal medical treatment after October 28, 2013, which the ALJ acknowledged. (Tr. 22). Claimant saw Dr. Blankenship on only two occasions in 2014. (Tr. 548-51, 607-10). As the ALJ recognized, Claimant no longer sought treatment for recurrent disc herniation, pain management, had not surgeries, and did not attend physical therapy sessions. (Tr. 21-22).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's failure to include a further restriction for stretching in the RFC was not erroneous as the requirement could be accommodated through scheduled breaks.

Claimant also contends the ALJ should have included a restriction for her medication which caused her to need to use the restroom frequently. The ALJ recognized Claimant's subjective complaints regarding the use of Lisinopril which she alleged caused her to go to the bathroom frequently. (Tr. 21-22). The ALJ concluded that the medical records from her treatment did not corroborate the allegations. (Tr. 22). Indeed, Claimant's subsequent visits to Dr. Blankenship do not indicate problems with the medication. (Tr. 548-51, 607-10). The ALJ is not required to include unsubstantiated limitations into the RFC.

Claimant also contends she will continue to have excessive absences from work. Other than sheer speculation that her infrequent leaving of her home and minimal activities translated into absences from work, Claimant provides no substantiation for this claim.

Claimant also challenges the ALJ's credibility determination. Claimant admits that she had reached maximum medical improvement and that her doctor could do nothing further for her. She draws a

different conclusion than her physician, however, as to her ability to engage in gainful employment. Dr. Blankenship noted the improvement in Claimant's condition as a result of her treatment. (Tr. 545-46). Despite her claims of pain, Dr. Blankenship found she had obtained good results from her injections. (Tr. 548, 608). His examination of her revealed no abnormalities. (Tr. 548, 607). Views of her lumbar spine showed no complications. (Tr. 549-50, 608-09). She had a normal gait and walked without an assistive device. (Tr. 549, 608). Straight leg raising was negative with normal sensation. (Tr. 549, 608). He noted some restriction in motion. (Tr. 549).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

10

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment and contradictory objective medical testing form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

**Step Five Considerations**

Claimant contends the hypothetical questioning of the vocational expert failed to include all of her functional limitations. This conclusion is based upon a presumption that the RFC was erroneous. This Court has determined that the RFC was supported by substantial evidence and the questioning of the vocational expert accurately reflected the ALJ's RFC. *See* Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). No error is

found in the hypothetical questioning of the vocational expert.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 26th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE